My name is Thomas Breen, B-R-E-E-N, and I, along with John Brayman, who is here, represent Mr. Cacini. And Justice Cabal, Assistant State's Attorney, on behalf of the people. Okay, right. All right, so we'll give each side 15 minutes. Appellants, want time for rebuttal? Yes, Judge, I'd like to reserve five minutes. Okay, you may. All right. Thank you. Your Honor, in reviewing this record, or Justices, I apologize. First of all, thank you very much for giving us oral argument in this matter. Justices, in reviewing the entirety of this record, it is almost impossible to know where to begin. I think perhaps the best place for us to begin is the falsity of the evidence that was presented by the prosecution. Detective Regan testifies to certain things that occurred as he attempted to pull Mr. Cacini out of his car while Mr. Cacini was strapped in in his seat belt. The rendition that Mr. Regan gives us is, to me, thoroughly impossible to even comprehend how it were to begin or how it could have occurred. But more importantly, Mr. Regan is well aware of the fact that Mr. Cacini is charged with the offense of attempt murder. And to sustain the charge of attempt murder, there must be evidence of an intent to kill. Which in this case, there is no evidence. But Mr. Regan, in an attempt to pursue a conviction for attempt murder, tells a story that consists of Mr. Cacini driving his Mercedes-Benz coupe over the left and right leg of Detective Regan, as well as over the left portion of his upper body. Counsel, I don't want to interrupt, but I believe we're all familiar with the facts of the case with regards to how the incident took place. Very good, Judge. But here's the point that I wanted to make along those lines. What were the injuries? Did the defense counsel pursue the information that was available to him in the medical records? What did the medical records show? Well, the medical records showed that despite what Regan said about injury to his mouth and teeth, that his teeth were normal. That there were no injuries to his leg, mouth, jaw, tongue, or teeth. That he did have a dislocated shoulder, and he had a superficial abrasion to his left elbow. He was able to move his extremities well. He had an active range motion with minimal pain in his left shoulder. His gross motor functions were within normal limits. He denied being in and out of consciousness, even though he testified to that. And that the hospital records repeatedly show that Regan did not report losing consciousness. That the paramedics considered him to be, on the Glasgow Coma Scale, to be of the highest rating. Mr. Brady, if I could ask you a question. Sure. So, are you alleging that the defendant's conviction is based on this alleged perjured testimony? Yes. And how is that connection? Because, Judge, if it is perjured testimony, then this court should reverse outright the attempt murder conviction. It is obviously false testimony. And it is false testimony that should have been known to the defense attorneys who had the medical records and never bothered cross-examining Regan about the medical records. It was false testimony. So is that more of an ineffective assistance of counsel type argument? It is. But also, Your Honor, the prosecution had access to the medical records. And they knew, or should have known full well, that the records did not corroborate. In fact, contradicted Detective Regan's testimony. And that should be disturbing to this court. Counsel, if I can just interrupt you. Certainly. Only because we only have 15 minutes. I would like you to address the omissions in the jury instructions. Yes. And I would like to do that, too. I will move on. I had comments to make about the Harris testimony. The instruction, Judge, self-defense was considered by the court. The court made a finding of fact and law that the jury should be instructed as to self-defense. The judge gave a definition of self-defense. The judge gave the issues instruction regarding self-defense. But in the elements instruction, which, as you all know and you have many years' experience as trial lawyers, you know full well that the element instruction is probably the most important instruction for a jury. The propositions must be proven, each and every one, beyond a reasonable doubt. The fourth proposition in this case, I believe it would have been the fourth proposition, would have been that the state must prove beyond a reasonable doubt that there was not lawful justification in what Mr. Cassini did. That proposition was never given to the jury, and that is a fatal flaw. And the jury was never instructed that the state must, by proof beyond a reasonable doubt, negate, negate the allegation of self-defense. So are we looking at harmless error here, then? No, Your Honor, I do not believe we're looking at harmless error. I believe we're looking at plain error. And I believe, Judge Further, that there is no waiver of this and no forfeiture of this issue because Illinois Supreme Court Rule 451C says that substantial defects are not waived by failure to make timely objections. So combine that, the poor jury instructions that were given here, with these arguments by the prosecutors, from opening statement to closing argument. Let me give you an example. You know, judges and justices, that to prove attempt murder, there must be evidence of an intent to kill. It's not a reckless act. It is actual intent to kill. Here is what the prosecutors were telling the jury. In opening statements, the prosecutor claimed that the men... Counsel, I hate to stop you, but opening statements are not evidence. I realize that, Jim, but just in combination with the jury instructions, the state counseling mentions recklessness, that recklessness is the mens rea in this case, and it absolutely is not. And you know from reading the brief that a jury sent out a note, and it's a very interesting note, because the note indicates they are confused on this very issue. Can we find intent based on the fact that a defendant engaged in a course of conduct that could reasonably be considered to end in death? The prosecutors were arguing to the jury that it is a reasonable man standard and it isn't. It is intent to kill. I believe my time may be up, and I will reserve five minutes. Thank you. Thank you. Good morning, Your Honors. Good morning. Counsel, may it please the Court, my name is Jessica Ball, Assistant State's Attorney on behalf of the people. First, just as a preliminary matter regarding the consolidation, the people are not asking this Court not to review all of the issues raised in the defendant's brief, just that it be done in the proper procedural posture. Consolidating the cases doesn't change the law that's applied to each case. The direct appeal remains a direct appeal, and the post-conviction remains a post-conviction. And in that regard, regarding the defendant's allegations of perjury, the only perjury claim that's properly before this Court on direct appeal is with respect to the defendant's, to the time, I'm sorry, Officer Regan testified regarding how much time he was off of work. If you'd like, I can address that issue. Really? The other issues that he raises with respect to perjury, the extent of Officer Regan's injuries, that's not properly before this Court on direct appeal. The medical records were not part of the trial record. They were attached to the post-conviction petition. So his PC claim in this regard is the ineffective assistance of counsel. He says that trial counsel should have cross-examined the witness on these claims. And I just want to stop you. I don't want to get to the PC. I want to start with the trial. And because I asked counsel to address it, I'd like you to address the jury instruction. Absolutely. The self-defense instructions or the defense of property instructions weren't even warranted in this case. So there can be no error. The State's evidence here did not raise the issue of self-defense, and the defendant's evidence didn't raise it either. Not even slightly. Didn't the trial court think that there might have been enough there to give an instruction? Even though the trial court gave them does not mean that they were warranted. And when you look at the evidence, it's not there. Again, the State's evidence didn't raise it, and the defendant's didn't either. At most, he said that he struggled with the officers, but he denied hitting them. And he said that at most the car door hit Officer Regan as he drove away, but that he did not intend for that to happen. He absolutely denied hitting Officer Regan or running him over with his car. His testimony was that he did not intentionally hurt anyone that night. That's not enough to warrant self-defense instructions. And there's another appellate court case with the same facts where self-defense was not warranted, but the defendant admitted to struggling with the officers, but denied shoving them, striking them, or pushing them. How about accelerating the car while he's struggling with the officers? He said he did that to get away. It wasn't that he intended to hit the officers. He said he never ran over them. And he can't combine his evidence that he was in fear and wanted to get away with the State's evidence that he intentionally struck the officers to get self-defense either. Dukes, Robinson, and Bailey all say that. All right. Now, if we think there is even the slightest evidence and that the instructions should be given, and that it wasn't or the forced proposition wasn't given, how do you address that issue? If I could just for a moment say that even if you combine the evidence, it still doesn't support self-defense because in an attempt murder to a police officer case or an aggravated battery to a police officer case, those self-defense instructions are only allowed if the defendant didn't know that the victims were the police. Well, I think what Justice Lampkin is asking you is, given that the trial court ruled that the self-defense instruction was appropriate, in a situation where a self-defense instruction is given to the jury, would you concede that it's error not to include the forced proposition in the issues instruction? We certainly wouldn't concede that it's plain error here. The defendant did not request it and he didn't object to it. All right. So let's take it one step at a time. It's error. There's an error, but it doesn't… It's already been held by this court, by this very panel, that it's error. But it's not plain error, and that's what we're looking at here. And when you look at… But it's an instructional error. It still gets… And it's an error. It's an error, is it not, that goes towards the jury's understanding of how to allocate the burden of proof. Well, if you look at the instructions as a whole, the jury was aware that the state had to prove beyond a reasonable doubt that the defendant was not justified in the force that he used. And in this case, you also have to consider that the defendant never argued self-defense or defensive property to the jury. I'm sorry. Let's take a step back. Where in the instructions does it tell the jury that it's the state's burden to disprove the defense of self-defense? The jury did receive IPI 2.03, which sets forth the state's burden of proof, 6.05X, which defines attempt murder as the attempt to kill without lawful justification. They received 11.15, which defines aggravated battery as causing bodily harm without lawful justification, and 24-25.06 and .08 defined the use of force in defensive person and defensive property. As a whole, the jury was aware of those things. And we have to consider, in this case, the defendant never argued that to the jury. It wasn't the real theory of defense. In all of the cases cited by the defense, the defendant argued self-defense to the jury. In this case, he never did. He argued instead that he didn't know that they were the police and he didn't have the specific intent to kill. At most, during his closing argument, he said that it was a fight-or-flight situation, but he said specifically he didn't fight. He just wanted, he just fled. So he can't argue now that the jury convicted him because they didn't understand the law of self-defense when he never asked to be acquitted on those fronts. That's where it's not fair. But he didn't argue it to the jury. He didn't ask for it from the jury. But he asked for the instruction. You can't stand in front of us and say he didn't want the jury to be instructed with regard to self-defense. He did request the instruction, the self-defense instruction. He didn't follow it up and actually tender the issues instruction or object to its absence. Everything that he was presenting to the jury during trial... Just in a general sense, I wonder, how does this keep happening? This is not the first time that this has happened. They don't look at the jury instructions. We've worked on them for years and years. I worked on that committee for 19 years. I almost lose my mind every time I get a case when these instructions, nobody looks at the committee notes. Not the state's attorneys, not the defense attorneys, not the judges. It's amazing. I understand that it's frustrating. But did it impair, did it affect the fundamental fairness of this defendant's trial? It didn't. He never argued to the jury that he should be acquitted on those grounds. And that distinguishes this case from the other cases that the defendant cites that happen in front of this panel. The defendant never argued it here. But didn't the state raise it in closing argument that there was going to be a self-defense instruction to the jury? They did receive. And thereby confusing the jury as to the possibility of whose burden it was? No, the state's comments related to what would have been the defendant's initial burden of production on the issue of self-defense. And those comments are proper. It wasn't the state taking advantage of the lack of the jury instruction. We were just explaining that the burden hadn't even gotten to us yet. And it was also in response to the defendant's fight-or-flight argument that they hadn't even proved the fight. And again, even if they were improper in any way, reversal is not warranted in this case. Where absent those comments, it wouldn't have changed the verdict. The defendant never asked to be acquitted on those grounds. And that distinguishes this case from the other ones that have been before this panel and other appellate courts. But doesn't it almost, leaving that last proposition out, doesn't it almost make it impossible for the jury to come to an avert of not guilty because of self-defense? If they follow that instruction, the issue's instruction, which doesn't say anything about self-defense, it says in order to prove the defendant guilty, the state has to prove bing, bing, bing, right? That whatever the charge is, because there's several charges, but it doesn't say anything in there. And that issue's instruction, which they're following one after another, it doesn't say anything in there. The state has to disprove self-defense. So if the jury follows that instruction, they're required by that instruction to ignore self-defense. Because it says in order to prove the defendant guilty, the state must prove the following propositions, one, two, three. If you find, and it says, at the end it says, if you find that the state has proven these propositions beyond a reasonable doubt, you have to find them guilty. So they're told you have to find them guilty, even without considering self-defense. It's a contrary instruction. I mean, it's basically, it's inconsistent with the rest of the instructions. Which is the other point, which is that they're also told that they need to review all of the instructions together, that you don't just get to isolate one instruction. The law has always been you consider all of the instructions in their entirety. And in their entirety... I'm sorry. I just don't see where in the instructions it says the state has to disprove, or they have to prove beyond a reasonable doubt that the defendant was not justified in using the force that he used. That's, you know, that's, it's there. It was right there. Your answer is that it's in the without lawful justification phrase. It is in there. So the jury is supposed to take the without lawful justification phrase that's in the definition instruction and interpose that into the use of the instruction, even though it's not there. They interpose all of the instructions. They're meant to be, the instructions in their entirety is what's meant to instruct the jury, not just one of them. Without legal justification means if it's not defined. And if the defendant had argued to be acquitted on self-defense grounds, it would be more pertinent and relevant, and it would perhaps have fundamentally changed the fairness of his trial. But it didn't here. He never argued to the jury that I acted in self-defense. He said the opposite. So he can't benefit now from this argument that he's making on appeal that he never presented to the jury. He never asked that of them. So the jury, he can't say now that the jury was confused by something he never asked them to even consider. And just because that instruction, the definitional instruction was in front of him, doesn't mean that he asked for that. Doesn't mean that he asked the jury to consider to find him not guilty on those grounds. He did the exact opposite of that. So in this case, under these circumstances, these facts presented in this record that's before this court, it didn't fundamentally affect his trial, and it does not amount to plain error. If you'd like, I can also address the allegations, the perjury allegations. No, that's okay. As to the remaining issues, the people would rest on their brief unless you have any other questions. We would respectfully request this honorable court to approve. Didn't Harris testify that he saw the defendant kick Regan? Am I wrong about that? No, that's correct. That was the state's evidence. That was not from the defense evidence. The state's evidence showed all of the hitting, the kicking. The defense evidence. Well, Harris was the state's witness. Yes. Yeah. If there are no other questions, we would rest on our brief and ask that you affirm the defendant's conviction and the denial of his post-conviction petition. Thank you. Thank you. I think I can be very brief here, Justices. Again, I appreciate your time. The defense attorney doesn't have to argue self-defense for self-defense to be put into the element instruction. There was evidence during the course of the trial to justify the instruction. The court ruled in that manner, and the attorney can certainly leave it up to the jury to determine whether or not Mr. Cassini was defending himself. And when you read Mr. Cassini's testimony, it certainly sounds like he was defending himself. Here's the other problem, you know, and I don't like pointing fingers, but here is the prosecution in their closing argument, and I know closing arguments are not evidence, but in these circumstances, when the instructions were deficient, these arguments take on kind of a life of their own. Here's on page 36 of our brief. Self-defense, fight, flight, flight. Well, supposedly he fought, right? That's self-defense. Who are you going to see? You are going to see in the instruction that's his burden. This is the self-defense he testifies, his burden. He has to prove it. Did he prove anything with regard to self-defense? The burden is being shifted by the prosecution. The jury is not being told of a key element that the state must prove beyond a reasonable doubt, and to this very day, before your honors, the state is still taking the position that the burden is somehow shifted. Respectfully, we ask this court to reverse these convictions. Thank you. Thank you. Okay. I want to thank both counsels on a well-argued matter. This court is going to take this case under advisement, and we're going to take a short recess.